# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| WENDY ATKINSON and SYLVIA COOKSEY, individually and on behalf of other members of the general public similarly situated, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>)   Civil Action No. _____<br>) |
| v. | )<br>) |
| HARPETH FINANCIAL SERVICES, LLC; MICHAEL HODGES; and TINA HODGES, | )   DEMAND FOR JURY TRIAL<br>)<br>) |
| Defendants. | )<br>) |

## COMPLAINT

Plaintiffs Wendy Atkinson and Sylvia Cooksey (collectively "Plaintiffs") bring this complaint against Defendants Harpeth Financial Services, LLC, Michael Hodges, and Tina Hodges for violations from the extortionate scheme described herein and allege as follows:

## PARTIES

1. Plaintiff Wendy Atkinson is a citizen of the State of Tennessee and resident of Sumner County, Tennessee.

2. Plaintiff Sylvia Cooksey is a citizen of the State of Tennessee and resident of Rutherford County, Tennessee.

3. Defendant Harpeth Financial Services, LLC is a Tennessee limited liability company doing business as Advance Financial and/or Advance Financial 24/7. Defendant can

1

be served on its registered agent, Michael Hodges, at its principal place of business, 100 Oceanside Drive, Nashville, TN 37204.

4. Defendant Michael Hodges is a citizen of the State of Tennessee who, upon information and belief, resides in Davidson County.

5. Defendant Tina Hodges is a citizen of the State of Tennessee who, upon information and belief, resides in Davidson County.

## JURISDICTION AND VENUE

6. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as mandated by 18 U.S.C. § 1964(a), and 28 U.S.C. § 1367.

7. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b) because both Plaintiffs and Defendants reside in this district, Defendants do business in this district, and a substantial part of the events or omissions giving rise to the claim occurred in this district.

## ALLEGATIONS OF FACT

8. Defendant Harpeth Financial Services, LLC is owned and operated by two individuals, Defendants Michael and Tina Hodges, and does business across the State as Advance Financial and/or Advance Financial 24/7. Plaintiffs hereinafter refer to Defendant Harpeth Financial Services, LLC as "Advance Financial."

9. Michael and Tina Hodges, husband and wife, are co-founders and co-owners of Advance Financial. Upon information and belief, at all times relevant, Michael Hodges has served as Chairman and Tina Hodges has served as CEO of Advance Financial. Advance Financial currently has 70 retail locations throughout the State and also provides financial services online.

2

10. Founded in 1996, Advance Financial originally provided a variety of short-term, small dollar lending products to customers who typically do not qualify for commercial loans from banks or other lending institutions. These short-term loans included usury vehicles such as payday loans, cash advances, title loans, and unsecured installment loans.

11. However, upon information and belief, Advance Financial currently offers only one type of loan product, the flexible loan or "FLEX loan," which is an open-ended line of credit.

12. Beginning in 2015, Defendant Advance Financial instituted a policy and/or practice of no longer servicing its short-term loan products. As part of this uniform policy and/or practice, Defendant Advance Financial refused to accept timely installment payments, a clear repudiation of the terms of the short-term loan agreements.

13. Instead, acting under the direction of Defendants Michael and Tina Hodges, Advance Financial employees demanded that consumers immediately pay the full balance of their short-term loans or fall into default. Faced with the threat of default and additional financial hardship, consumers had no choice but to transfer the balance of their short-term loans into FLEX loans. Through this scheme of extorting consumers into signing far more onerous FLEX loans, Defendants Michael and Tina Hodges were able to reap significant profits from ill-gotten interest payment.

14. Plaintiffs are or were customers of Advance Financial.

**Defendants' Breach and Extortionate Scheme**

15. The Dodd-Frank Act, passed by the United States Congress in 2010, mandated that the federal Consumer Financial Protection Bureau ("CFPB") promulgate certain consumer financial protection rules beginning in 2012.

3

16. In April 2013, the CFPB issued a white paper entitled Payday Loans and Deposit Advance Products, which was a scathing review of the short-term, small-dollar lending industry. The study, in particular, focused on the so-call "debt trap" problem created when borrowers take out short-term loans in order to repay other short-term loans. The paper signaled the CFPB's intention to engage in future rulemaking in the area of short-term lending.

17. At the time the white paper was published, Advance Financial primarily offered to its customers precisely the type of short-term usury products detailed in the white paper.

18. Defendants Michael and Tina Hodges thereafter determined to end-run the impending federal regulations on short-term lending products by creating a new type of lending product outside the "short-term" category. Defendants Michael and Tina Hodges crafted proposed legislation and engaged in substantial lobbying efforts to ensure presentment and passage of their bill in the Tennessee General Assembly.

19. Defendants Michael and Tina Hodges, through their political action committee, Advance PAC, registered in the name of Defendant Tina Hodges, and other donation vehicles, invested hundreds of thousands of dollars in promoting the creation of a middle-term usury product pursuant to Tennessee state law.

20. Defendants Michael and Tina Hodges made substantial financial contributions to a multitude of legislators in the Tennessee General Assembly in the years after the CFBP white paper was released.

21. The result of these efforts was the Flexible Credit Act, Tenn. Code Ann. § 45-12-101 *et seq*. ("Act"). The Act authorizes middle-term, unsecured lines of credit, capping non-principal payments at 24% interest per year and 0.7% fees per day. The resulting maximum annual percentage rate ("APR") is 279%.

4

22. Defendants Michael and Tina Hodges carried the bill through the General Assembly. In fact, its sponsors knew little about the proposed legislation. The Senate bill was presented in committee not by its sponsor but by Cullen Earnest, Advance Financial's Vice President for Public Policy and Communications. The sponsor of the House bill did not even know the maximum APR allowed under the bill.

23. The Act was adopted by the legislature in April 2014 and became effective on January 1, 2015. Upon information and belief, Defendant Advance Financial then began changing their retail loan offerings from short-term products to the new middle-term FLEX loan.

24. As part of this shift to FLEX loans, Defendants Michael and Tina Hodges devised a scheme to move all current customers with outstanding short-term loans to FLEX loans.

25. Under a company-wide policy and practice, when a customer attempted to timely pay the installment payment under his or her short-term loan, Defendant Advance Financial employee rejected the payment, thereby repudiating the terms of the short term loan agreement.

26. Next, the Advance Financial employee, acting under the direction of Defendants Michael and Tina Hodges, would then inform the customer that he or she must either: (1) immediately pay the short-term loan balance in full or (2) transfer the balance of the short-term loan into a FLEX loan.

27. Under this uniform policy and practice, Advance Financial employees misrepresented to short-term loan customers the terms and conditions of the FLEX loan agreement.

28. Defendants Michael and Tina Hodges knew that their customers were already in a difficult financial position (which was the reason for securing a short-term loan in the first place), and that payment in full was not a viable option. Taking advantage of the situation and

5
Case 3:17-cv-00504   Document 1   Filed 03/09/17   Page 5 of 18 PageID #: 5

their vulnerable consumer base, Defendants adopted the policy and practice, instituted at all of their locations across the state, of forcing current short-term loan customers into FLEX loan agreements, the terms of which are substantially more onerous and costly.

## **Plaintiffs Fell Victim to Defendants' Extortionate Scheme**

29. Plaintiff Atkinson was a store manager who found herself temporarily out of work when her store unexpectedly closed. Needing a limited injection of funds to pay her mortgage until she could find employment, Ms. Atkinson went to an Advance Financial location in Gallatin, Tennessee and took out an installment loan for $1,025 with a 104.63% APR.

30. The loan agreement Ms. Atkinson signed with Advance Financial, dated April 17, 2015, provides for seven (7) equal installment payments of $170.93, each to be paid every two weeks, resulting in a total repayment amount, including principal and interest, of $1,196.50. Michael Hodges signed Ms. Atkinson's loan agreement on behalf of Advance Financial.

31. Ms. Atkinson made two scheduled payments on her installment loan. On or about May 29, 2015, she went to an Advance Financial location in Hendersonville, Tennessee to make her third scheduled installment payment. The Advance Financial employee, acting under Defendants' direction, informed her that the company no longer honors its installment loan agreements with customers and rejected the payment. Acting under Defendants Michael and Tina Hodges' direction, the Advance Financial employee informed Ms. Atkinson that she must either repay the full amount of the loan on the spot, or sign a FLEX loan agreement for the amount outstanding. The employee told Ms. Atkinson that, if she didn't have the full repayment amount, she did not have a choice but to sign a FLEX loan agreement.

6

32. Ms. Atkinson did not have the funds to repay the full loan amount that same day. Concerned about defaulting on her original loan and seeing no other option, Ms. Atkinson signed a FLEX loan agreement with Advance Financial on or about May 29, 2015.

33. Ms. Atkinson's FLEX loan, like all Advance Financial FLEX loans, is an open-ended line of credit with a 279.50% APR. The FLEX loan agreement given to Ms. Atkinson shows a $1,450 credit limit, but otherwise does not disclose the total credit amount, the schedule or amount of payments, or the total estimated repayment amount.

34. Ms. Atkinson has been making biweekly payments of $180-$250 on her FLEX loan since May 2015 and only repaid the full FLEX loan balance on or about February 14, 2016. To date, she has paid a total of approximately $7,000-$8,000 in repayment of her original $1,025 installment loan. In other words, Ms. Atkinson paid approximately $6,000-$7,000 in interest and fees under the FLEX loan agreement that she would not have been required to pay under her original short-term loan.

35. If Defendant Advance Financial had honored its installment loan agreement with her, Ms. Atkinson would have fully repaid the loan on or about July 24, 2015, more than a year and a half ago, and would have paid only $171.50 in interests and fees.

36. Plaintiff Cooksey also found herself temporarily put of work and in need of an injection of funds temporarily to pay her bills. Ms. Cooksey went to an Advance Financial location in Rutherford County, Tennessee and took out an installment loan for approximately $1,000 at an estimated APR of 133.33%, upon information and belief.

37. The installment loan agreement Ms. Cooksey signed with Advance Financial, dated approximately September 2014, provided for several equal installment payments of $110 each to be paid biweekly, resulting in a total repayment amount, including principal and interest,

7

of approximately $1,760-$1,980, upon information and belief. Michael Hodges signed Ms. Cooksey's loan agreement on behalf of Advance Financial.

38. Ms. Cooksey made several scheduled payments on her installment loan. On or about May 26, 2015, she went to an Advance Financial location in LaVergne, Tennessee to make a regularly scheduled payment. The Advance Financial employee informed her that the company no longer serviced its signature loan agreements with customers and rejected her payment. Acting under Defendant Michael and Tina Hodges' direction, the Advance Financial employee informed Ms. Cooksey that she must either repay the full amount of the loan on the spot, or sign a FLEX loan agreement for the amount outstanding. The employee informed her that there were no other options, but that she could inquire at other Advance Financial locations.

39. That same day, Ms. Cooksey traveled to two additional Advance Financial locations, in Smyrna and Antioch, and attempted to make the scheduled payment on her installment loan. Advance Financial employees at these locations, all of whom were acting under Defendants' direction, similarly told Ms. Cooksey that the company had decided not to honor its short-term loan agreements with customers and could not service those types of loans.

40. Ms. Cooksey returned to the Advance Financial located in La Vergne and asked the Advance Financial employee at the La Vergne location how the interest rate of the FLEX loan compared to the rate on her signature loan. The employee answered that the FLEX loan rate was lower. The employee also assured Ms. Cooksey that the payments were reasonable. The employee informed Ms. Cooksey that Advance Financial would use the FLEX loan to pay off the installment loan Ms. Cooksey had taken out in the past and presented the FLEX loan as a better option with a more flexible repayment schedule and lower interest rates.

8

41. Ms. Cooksey did not have the funds to repay the full installment loan amount that same day. Concerned about defaulting on the installment loan she had originally taken and accruing late fees, and seeing no other option, Ms. Cooksey signed a FLEX loan agreement with Advance Financial on or about May 26, 2015. She signed the agreement on an electronic key pad without being presented with the agreement itself to review.

42. Ms. Cooksey's FLEX loan, like all Advance Financial FLEX loans, is an open-ended line of credit with a 279.50% APR. Upon information and belief, the FLEX loan agreement given to Ms. Atkinson showed a $4,000 credit limit, but otherwise did not disclose the total credit amount, the schedule or amount of payments, or the total estimated repayment amount.

43. Ms. Cooksey continued making the same $110 biweekly payment toward her FLEX loan balance. However, she soon discovered that only a few dollars each payment went toward the principle. Ms. Cooksey made all scheduled payments, without defaulting, until February 10, 2016, when she repaid the balance in full (approximately $700-$800) using her annual tax refund monies.

44. Upon information and belief, Ms. Cooksey paid a total of approximately $2,606, or more than $1,000 above what she would have paid under her original signature loan agreement had Defendant Advance Financial honored that agreement.

45. If Advance Financial had honored its signature loan agreement with her, Ms. Cooksey would have fully repaid the loan on or about August, 2015, more than 6 months before her actual pay-off date, and would have paid only approximately $1,000 less in interest and fees.

46. Defendant Michael Hodges signed the FLEX loan agreement with Ms. Atkinson and Ms. Cooksey on behalf of Advance Financial. Upon information and belief, Defendants

forced all or substantially all then-current short-term loan customers like Plaintiffs to sign a uniform FLEX loan agreement bearing Hodges' signature.

47. Upon information and belief, during the calendar year 2015, Defendants coerced by extortionate means hundreds of short-term loan customers into executing onerous FLEX loan agreements.

## CLASS ALLEGATIONS

48. Plaintiffs seek relief from the wrongdoing of Defendants for themselves and for all those individuals similarly situated through Rule 23 of the Federal Rules of Civil Procedure. The putative class meet the statutory prerequisites of Fed. R. Civ. P. 23(a), as set forth herein.

49. The class Plaintiffs seek to represent (collectively, the "Class") is defined as follows:

> All Advance Financial customers who entered into a short-term loan agreement, and subsequently transferred the balance of the short-term loan to a FLEX loan, after Advance Financial stopped servicing its short-term loan products.

50. Plaintiffs reserve the right to amend the Class definition if discovery and further investigation reveals that the Class should be expanded or otherwise modified.

51. Plaintiffs reserve the right to establish sub-classes as appropriate.

52. This action is brought and properly maintained as a class action under the provisions of Federal Rules of Civil Procedure 23(a)(1)-(4) and 23(b)(3). As used herein, the term "Class Members" shall mean and refer to the members of the class.

53. <u>Numerosity</u>: While the exact number of members of the Class is unknown to Plaintiffs at this time and can only be determined by appropriate discovery, membership in the

Class is ascertainable based upon the records maintained by Advance Financial. At this time, Plaintiffs are informed and believe that the Class includes hundreds of members. Therefore, the Class is sufficiently numerous that joinder of all members of the Class in a single action is impracticable under Federal Rule of Civil Procedure Rule 23(a)(1), and the resolution of their claims through the procedure of a class action will be of benefit to the parties and the Court.

54. <u>Ascertainability</u>: Names and addresses of members of the Class are available from Advance Financial's records. Notice can provided to members of the Class through direct mailing, publication, or otherwise using techniques and a form of notice similar to those customarily used in other consumer class actions arising under federal law.

55. <u>Typicality</u>: Plaintiffs' claims are typical of the claims of the other members of the Class which they seek to represent under Federal Rule of Civil Procedure 23(a)(3) because each Plaintiff and each member of the Class has been subjected to the same extortionate practices and has been damaged in the same manner thereby.

56. <u>Adequacy</u>: Plaintiffs will fairly and adequately represent and protect the interests of the Class as required by Federal Rule of Civil Procedure 23(a)(4). Plaintiffs are adequate representatives of the Class, because they have no interests which are adverse to the interests of the members of the Class. Plaintiffs are committed to the vigorous prosecution of this action and, to that end, Plaintiffs have retained counsel who are competent and experienced in handling class action litigation on behalf of consumers.

57. <u>Superiority</u>: A class action is superior to all other available methods of the fair and efficient adjudication of the claims asserted in this action under Federal Rule of Civil Procedure 23(b)(3) because

a) The expense and burden of individual litigation make it economically unfeasible for members of the Class, who already bare the financial hardship of Defendants Michael and Tina Hodges' extortionate credit practices, to seek to redress their claims other than through the procedure of a class action.

b) If separate actions were brought by individual members of the Class, the resulting duplicity of lawsuits would cause members to seek to redress their claims other than through the procedure of a class action;

c) Plaintiffs and Class members have uniform breach of contract claims based on form loan agreements and a uniform company-wide policy constituting breach of those agreements, making class resolution of claims judicially efficient; and

d) Absent a class action, Defendants likely would retain the benefits of their wrongdoing, and there would be a failure of justice.

58. <u>Commonality/Predominance</u>: Common questions of law and fact exist as to the members of the Class, as required by Federal of Civil Procedure 23(a)(2), and predominate over any questions which affect individual members of the Class within the meaning of Federal Rule of Civil Procedure 23(b)(3).

59. The common questions include, but are not limited to, the following:

a) Whether Defendants Michael and Tina Hodges' practice forcing customers to transfer the balance of their short-term loans to FLEX loans, is illegal;

b) Whether Defendant Advance Financial breached the form short-term loan agreements with Plaintiffs and Class members uniformly by refusing to service the agreements;

12

c) Whether Defendants Michael and Tina Hodges misrepresented credit terms or otherwise violated disclosure requirements, as alleged herein;

d) Whether Plaintiffs and members of the Class sustained damages, and if so, the appropriate measure of damages; and

e) Whether Plaintiffs and members of the Class are entitled to an award of pre-judgment interest, reasonable attorneys' fees, and costs of this suit.

60. In the alternative, this action is certifiable under the provisions of Federal Rule of Civil Procedure 23(b)(1) and/or 23(b)(2) because:

a) The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendants;

b) The prosecution of separate actions by individual members of the Class would create a risk of adjudications as to them which would, as a practical matter, be dispositive of the interests of the other members of the Class not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

c) Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole and necessitating that any such relief be extended to members of the Class on a mandatory, class-wide basis.

61. Plaintiffs are not aware of any difficulty which will be encountered in the management of this litigation which should preclude its maintenance as a class action.

62. For the reasons stated *supra*, Count II of this action is alternatively brought and properly maintained as a class action under the provisions of Tennessee Rules of Civil Procedure 23.01 and 23.02(3) on behalf of the Class defined herein.

## CAUSES OF ACTION

### COUNT I
### Violation of the Racketeer Influenced and Corrupt Organizations Act
### 18 U.S.C. § 1961 *et seq.*
*Asserted against Defendants Michael Hodges and Tina Hodges*

63. Plaintiffs incorporate by reference and re-allege each and every allegation contained above, as though fully set forth herein.

64. The Racketeer Influenced and Corrupt Organizations Act of 1970, codified at 18 U.S.C. § 1961 *et seq.* ("RICO"), provides civil remedies for persons injured by the acts of persons operating an enterprise engaged in a pattern of racketeering activities.

65. Plaintiffs are persons within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

66. Defendants Michael and Tina Hodges (collectively "Hodges") are persons within the meaning of 18 U.S.C. §§ 1961(3) and 1962.

67. At all times relevant to this Complaint, Advance Financial was an "enterprise," as defined by 18 U.S.C. § 1961(4), within the meaning and for the purposes of RICO.

68. At all times relevant to this Complaint, Advance Financial was engaged in interstate commerce, providing usury products to customers in Tennessee and bordering states, specifically marketing retail locations in Tennessee to customers in states bordering Tennessee, and providing usury products across the country via its online portal.

69. At all times relevant to this Complaint, the Hodges were members of, associated with and employed by Advance Financial.

70. The Hodges willfully and intentionally committed, and conspired with each other to commit, racketeering activities by means of extortion as defined by state and federal law, 18 U.S.C. §§ 1961(1)(A), (B).

71. The Hodges engaged in targeted and prolonged lobbying activities, on behalf of themselves and Advance Financial, that facilitated their extortionate conversion of existing short-term loans to revolving, open-ended lines of credit.

72. The Hodges' conducted and participated directly and indirectly in the affairs of Advance Financial through multiple continuous and related acts of racketeering activity spanning a period of many months and which are still ongoing, against the Plaintiff and other customers, including member of the putative Class, on multiple occasions, so as to establish a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(5) and 1962.

73. The FLEX loan arrangements into which the Hodges forced Plaintiffs and Class members are revolving, open-ended lines of credit on which the company encourages repeated withdrawals for personal use. Having now an indefinite, ongoing usury relationship with all such customers, the Hodges continue to engage in and profit from their racketeering activities.

74. The Hodges profited from their racketeering and extortionate debt collection activities described herein and reinvested those profits in the maintenance of the continued activities of the enterprise, in violation of 18 U.S.C. § 1962(a), (b), (c), and (d).

75. The Hodges have used the enterprise to conduct a pattern of racketeering and unlawful debt collection activities in violation of 18 U.S.C. § 1962. Defendants' actions in

15
Case 3:17-cv-00504   Document 1   Filed 03/09/17   Page 15 of 18 PageID #: 15

furtherance of this scheme are intentional and coordinated, and each individual Defendant has affirmatively participated in the enterprise as described herein.

76. Plaintiffs and Class members have been injured in their business and property by reason of the Hodges' violation of 18 U.S.C. § 1962. In particular, Plaintiffs and Class members suffered concrete financial loss due to the Hodges' actions in the form of monies paid in excess of their original short-term loans under the usurious FLEX loan arrangement.

77. Plaintiffs and Class members are entitled to all remedies available for violation of RICO, including but not limited to treble damages and costs of this action, as provided in 18 U.S.C. § 1964(c).

78. Plaintiffs reserve the right to allege other violations of law that constitute unlawful acts or practices under RICO.

## COUNT II
### Breach of Contract
*Asserted against Defendant Advance Financial*

79. Plaintiffs incorporate by reference and re-allege each and every allegation contained above, as though fully set forth herein.

80. Defendant Advance Financial entered into written loan agreements with Plaintiffs and Class members whereby it agreed to provide Plaintiffs and Class members with short-term, small-dollar loans to be repaid according to the agreed upon terms, typically in fixed installment payments.

81. These short-term loan agreements are valid contracts, supported by good consideration, and the unambiguous terms of these agreements are represented in writing.

82. Upon information and belief, Defendant Advance Financial entered into short-term, small-dollar lending arrangements via form promissory notes that are uniform in their terms. All such agreements are electronically signed by Michael Hodges.

83. In fact, in order to take out a short-term loan, Defendant Advance Financial required all customers, including Plaintiffs and Class members, to execute and enter into standard form contracts captioned loan agreement or promissory note.

84. Defendant Advance Financial repudiated the short-term installment agreements into which it entered with Plaintiffs and Class members by refusing to accept payment tendered by Plaintiffs and Class members in conformity with the terms of those agreements.

85. Defendant Advance Financial acted uniformly in breaching the short-term loan agreements of Plaintiffs and all Class members in order to discontinue those loans and change its business model completely to open-ended lines of credit.

86. Defendant Advance Financial's breach was knowing and intentional and was done in furtherance of the extortionate credit scheme described herein and violates the implied covenant of good faith.

87. As a result of Defendant Advance Financial's breach, Plaintiffs and Class members suffered damages, *inter alia*, in the form of monies paid in excess of their original short-term loans under the usurious FLEX loan arrangement.

**WHEREFORE**, Plaintiffs request the following relief:

1. An award to Plaintiffs of compensatory damages against Defendants in an amount to be proven at trial;

2. An award to Plaintiffs of treble damages and any other statutory damages to which they might be entitled;

3. An award to Plaintiffs of punitive and exemplary damages in an amount sufficient to deter Defendants and others from the commission of similar types of fraudulent, unfair and deceptive actions in the future;

4. An award of the costs and expenses of litigation, including but not limited to attorneys' fees; and

5. An award of any further equitable or legal remedy that the Court deems appropriate.

## JURY TRIAL DEMANDED

Plaintiffs, by their counsel, request a trial by jury on those causes of action set forth herein.

March 9, 2017                                    Respectfully submitted,

                                               *s/ Karla M. Campbell*
                                               Karla M. Campbell (BPR # 27132)
                                               Michael Isaac Miller (BPR # 34528)
                                               Branstetter, Stranch & Jennings, PLLC
                                               227 2nd Avenue North, 4th Floor
                                               Nashville, Tennessee 37201-1631
                                               Tel.: (615) 254-8801
                                               Email: karlac@bsjfirm.com
                                                                 isaacm@bsjfirm.com

                                               *Attorneys for Plaintiffs*