UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| WENDY ATKINSON, individually and on behalf of other members of the general public similarly situated, ) ) ) ) Plaintiff, ) ) v. ) ) ) HARPETH FINANCIAL SERVICES, LLC, ) MICHAEL HODGES, and TINA HODGES, ) ) Defendants. ) | Civil No. 3:17-cv-504 Judge Aleta A. Trauger |

## MEMORANDUM

The defendants have filed a Petition to Compel Arbitration and Dismiss Plaintiffs' Complaint or, in the Alternative, Stay the Action Pending Resolution of Arbitration (the "Petition") (Docket No. 11), to which the plaintiff has filed a Response in Opposition (Docket No. 15), and the defendants have filed a Reply (Docket No. 20). For the reasons stated herein, the Petition will be granted.

## PROCEDURAL & FACTUAL BACKGROUND

Harpeth Financial Services, LLC ("Harpeth Financial") is a Tennessee limited liability company that does business under the name Advance Financial and provides short-term loans to consumers. (Docket No. 1 ¶¶ 8, 10.) The plaintiff, Wendy Atkinson, alleges that Harpeth Financial and its co-owners – Michael and Tina Hodges – engaged in an extortionate scheme whereby they refused to service their customers' existing loans and, by threatening default on those loans, forced their customers to take out additional "FLEX" loans with far more onerous terms. (*Id.* ¶¶ 10–13.) Ms. Atkinson brings claims against Harpeth Financial for breach of

1

contract and against the Hodges for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, on behalf of herself and "[a]ll Advance Financial customers who entered into a short-term loan agreement, and subsequently transferred the balance of the short-term loan to a FLEX loan, after Advance Financial stopped servicing its short-term loan products." (*Id.* ¶¶ 48–87.) The defendants now seek an order compelling arbitration of Ms. Atkinson's claims and dismissal of this action or, in the alternative, a stay of the matter pending resolution of the arbitration. (Docket No. 11.)

## I. The Petition

On April 6, 2017, the defendants filed the Petition (Docket No. 11), accompanied by a Memorandum in Support (Docket No. 12) and the Affidavit of Michael Hodges (the "First Hodges Affidavit"), which attaches two loan agreements between Ms. Atkinson and Advance Financial (Docket No. 13).[1] The first of these attached agreements demonstrates that, on May 15, 2015, Ms. Atkinson took out a short-term loan for $1025 from Harpeth Financial at an annual percentage rate of 104.63%, to be repaid in installments. (Docket No. 13-2.) The instrument memorializing this loan (the "Installment Agreement") contains an arbitration clause that provides, in part, that:

> Any Dispute by either [the plaintiff] or [Advance Financial] against the other, or against the employees, agents, or assigns of the other, will, upon election by either [the plaintiff] or [Harpeth Financial], be resolved by binding arbitration, including the applicability of this arbitration provision or the validity of the entire [Agreement].

(*Id.* at p. 2.) This arbitration clause defines the term "Dispute" broadly, to include, "without limitation, any claim, dispute or controversy arising from or relating, directly or indirectly, to this

---

[1] The First Hodges Affidavit also attaches agreements relating to loans made by Harpeth Financial to Sylvia Cooksey, who was initially included as a plaintiff in this action but has voluntarily dismissed her claims against the defendants. (Docket No. 14.)

2

[Agreement]." (*Id.*) Ms. Atkinson's signature appears at the end of this arbitration clause and again at the end of the Installment Agreement. (*Id.* at p. 3.)

The second of the agreements attached to the First Hodges Affidavit demonstrates that, on May 29, 2015, Ms. Atkinson converted the remaining balance on her installment loan into a flexible loan – called a FLEX loan – with a credit limit of $1450 at an annual percentage rate of 279.50%. (Docket No. 13-5.) The instrument memorializing this loan (the "FLEX Agreement") contains an arbitration clause providing that the parties will resolve all "Dispute[s]" through arbitration, with the term "Dispute" defined as follows:

> In this Clause, the word "Disputes" has the broadest possible meaning. This Clause governs all "Disputes" involving the parties. This includes all claims even indirectly related to your application and agreements with us. This includes claims related to information you previously gave us. It includes all past agreements. It includes extensions, renewals, refinancings, or payment plans. It includes all claims related to collections, privacy, and customer information. It includes claims related to setting aside this Clause. It includes claims about the Clause's validity and scope. It includes claims about whether to arbitrate.

(*Id.* at p. 4.) The FLEX Agreement also provides a 60-day period during which a customer can inform Advance Financial in writing that she chooses to opt out of the arbitration clause. (*Id.* at p. 5.) At the end of the Flex Agreement is a statement indicating that it was electronically signed by Ms. Atkinson. (Docket No. 13-5, p. 6.)

On March 27, 2017 – shortly after Ms. Atkinson filed this action – the defendants initiated arbitration of her claims. (Docket No. 12, p. 4.) The defendants then filed the Petition, requesting that the court compel arbitration of Ms. Atkinson's claims and dismiss the Complaint for lack of subject-matter jurisdiction, or – in the alternative – stay this action pending resolution of the arbitration. (Docket No. 11.) The defendants argue that Ms. Atkinson's claims are properly subject to the FLEX Agreement's arbitration clause, which "[b]y its terms, . . . supersedes the dispute resolution procedures set forth in 'all past agreements' between the

parties, including [the] prior Installment Agreement[]." (Docket No. 12, pp. 3, 5–6). The defendants acknowledge that Ms. Atkinson has challenged the application of this arbitration clause to her claims, but they argue that the "delegation provision" contained in that clause – which requires the parties to arbitrate "claims related to setting aside [the Clause[,] . . . claims about the Clause's validity and scope[,] . . . [and] claims about whether to arbitrate" – requires that an arbitrator, and not this court, determine the arbitrability of Ms. Atkinson's claims. (*Id.* at p. 7 (quoting Docket No. 13-5, p. 4).) As support for this argument, the defendants cite the Supreme Court's decision in *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010), which held that, when a party opposing arbitration raises no specific challenge to the enforceability of a delegation provision in an arbitration clause, the provision is enforceable and threshold questions concerning the arbitrability of the parties' claims must be referred to arbitration. (*Id.* at pp. 7–9.)

Even if the court were to determine that the FLEX Agreement or its arbitration clause were invalid, the defendants argue that this matter must still be referred to arbitration. (*Id.* at pp. 10–11.) If the FLEX Agreement or its arbitration clause are not valid, the defendants contend, then it cannot supersede the dispute resolution procedures set forth in the parties' previous Installment Agreement, which also contains an arbitration clause and delegation provision. (*Id.*) Moreover, the defendants argue that Ms. Atkinson alleged no basis for setting aside the arbitration clause or delegation provision found in the Installment Agreement but, rather, "affirmatively suggest[s] [the contract's] validity by claiming that the Installment Agreement[] [is a] 'valid contract[], supported by good consideration.'" (*Id.* (quoting Docket No. 1 ¶ 81).) Accordingly, the defendants argue that, no matter which of the two agreements currently governs the relationship between the parties, Ms. Atkinson's claims are subject to a valid arbitration agreement that requires the delegation of all issues of arbitrability to an

arbitrator.

Finally, the defendants request that the court dismiss Ms. Atkinson's claims. The defendants acknowledge that "the FAA mandates, at a minimum, that this action be stayed pending the resolution of arbitration." (*Id.* at p. 11 (citing 9 U.S.C. § 3).) Arguing that dismissal may be appropriate when a plaintiff's claims, "on their face, . . . so clearly fall within the scope of an arbitration clause that there [is] no question as to their arbitrability," the defendants contend that the court should dismiss the Complaint against them, rather than merely staying the case. (*Id.* (quoting *Dearmon v. Bestway Rent-To-Own*, No. 3:14-cv-900, 2014 WL 1961911, at *2 (M.D. Tenn. May 15, 2014)).) According to the defendants, Ms. Atkinson's claims are "clearly governed" by the FLEX Agreement's arbitration clause – or, in the alternative, by the arbitration clause found in the Installment Agreement – and the entire action, therefore, should be dismissed rather than stayed. (*Id.* at pp. 12–15.)

## II.   Ms. Atkinson's Response in Opposition to the Petition

On April 20, 2017, Ms. Atkinson filed a Response in Opposition to the Petition, in which she argues that the court should deny the Petition because her claims are not subject to any valid arbitration agreement. (Docket No. 15, p. 1.) Ms. Atkinson argues that the current dispute is not a "typical arbitrability dispute, in which the parties concede they entered into the arbitration agreement but dispute its scope" and, therefore, "mechanical resort to the written terms on the page" is inappropriate. (*Id.* at p. 4.) Ms. Atkinson's arguments pertain solely to the FLEX Agreement, which she argues superseded the Installment Agreement and rendered the dispute resolution procedures contained in that prior agreement unenforceable. (*Id.* at p. 14.) Based on the factual allegations of the Complaint, Ms. Atkinson argues that she is "entitled to the benefit of the state law contract defenses of unconscionability and economic duress to invalidate the

5

FLEX [Agreement]'s arbitration provision and the delegation provision contained therein." (*Id.* at p. 4.)

As additional support for her defenses of unconscionability and economic duress, Ms. Atkinson has submitted a declaration detailing the circumstances surrounding the formation of the FLEX Agreement. (Docket No. 16.) In her declaration, Ms. Atkinson states that, in spring of 2015, she took out an installment loan with Advance Financial for $1025. (*Id.* ¶ 1.) On May 29, 2015, she went to an Advance Financial location to make a scheduled payment on this loan but, when she attempted to make the payment, an Advance Financial employee informed her that the company no longer serviced "those kinds of loans" because the company's computer system no longer supported the payments.[2] (*Id.* ¶¶ 2–3.) The employee insisted that she pay the full balance on her installment loan immediately or take out a FLEX loan to cover that balance. (*Id.*) According to Ms. Atkinson, she asked the Advance Financial employee about the terms of the FLEX loan, and he told her that "it should be about the same as the terms on [her] installment loan." (*Id.* ¶ 4.) Ms. Atkinson did not, at the time, have enough money to pay the balance on her previous loan and, therefore, "believed that [she] had no choice but to sign up for" a FLEX loan. (*Id.* ¶ 5.)

According to Ms. Atkinson, once she agreed to take out the new loan, the Advance Financial employee handed her an electronic tablet that "took [her] through some prompt questions." (*Id.* ¶ 6.) Ms. Atkinson found this process to be "hurried and confusing," with the employee speaking to her and hurrying her through the prompts as she tried to read them. (*Id.* ¶ 9.) Ms. Atkinson recalls one of the last prompts being whether she agreed to the terms and conditions of the FLEX loan, but she does not recall those terms and conditions ever appearing

---

[2] This tactic, if true, reveals either incompetence or sharp practice of the most serious sort.

6

on the tablet.  (*Id.* ¶ 7.)  She further does not recall arbitration being mentioned in the electronic prompts, nor does she recall the Advance Financial employee mentioning arbitration at any point in the process.  (*Id.* ¶ 11.)  Ms. Atkinson states that she believed the terms of the FLEX loan to be those that were represented to her by Advance Financial's employee – namely, similar to the terms of her installment loan – and she electronically signed the agreement by checking a box on the tablet.  (*Id.* ¶¶ 7–8.)  Only after she had electronically signed the agreement was she given a printed copy of the FLEX Agreement.  (*Id.* ¶ 12.)

Based on these facts, Ms. Atkinson argues that the FLEX Agreement's arbitration clause, including the delegation provision contained therein, is unenforceable under Tennessee law.  (Docket No. 15, pp. 6–13.)  First, Ms. Atkinson argues that the arbitration clause is unconscionable because it is contained in a contract of adhesion that was offered on a "take it or leave it" basis, with Ms. Atkinson never being given the opportunity to review its terms.  (*Id.* at pp. 7–9.)  She further argues that the clause is unconscionable because she had no way of knowing, or even considering, the terms of the arbitration clause prior to signing it, and the defendants cannot demonstrate that the clause was "reasonable" under the circumstances.  (*Id.*)  Second, Ms. Atkinson argues that the arbitration clause is unenforceable because she entered into the FLEX Agreement under financial duress.  (*Id.* at pp. 14–16.)  According to Ms. Atkinson, the defendants took advantage of her financial weakness when they confronted her with an unlawful acceleration of the outstanding loan balance on her loan, a "fine distinction of law" that she lacked the "knowledge and sophistication" to understand.  (*Id.* at pp. 11–13.)  Accordingly, she requests that the court deny the Petition or, should the court determine that the matter must be referred to the arbitrator, merely stay the case, rather than dismiss her claims.  (*Id.* at p. 15.)

**III.     The Defendants' Reply in Support of the Petition**

On May 10, 2017, the defendants filed a Reply in support of the Petition (Docket No. 20), accompanied by a second affidavit from Mr. Hodges (the "Second Hodges Affidavit") (Docket No. 21).  In the Reply, the defendants argue that the "logical consequence" of Ms. Atkinson's arguments regarding the invalidity and unenforceability of the FLEX Agreement and its arbitration clause is that the Installment Agreement – and the arbitration clause and delegation provision contained therein – remain in effect.  (Docket No. 20, pp. 2–3.)  After all, if the FLEX Agreement's arbitration clause and all provisions contained therein are invalid, as Ms. Atkinson argues they are, then the provision within that clause superseding all past agreements between the parties is invalid.  (*Id.*)  Ms. Atkinson has not challenged the validity of the Installment Agreement's arbitration clause and delegation provision, and so, even if the court were to conclude that the FLEX Agreement's arbitration clause is invalid, the Installment Agreement would still require that this matter be referred to the arbitrator.  (*Id.*)

Should the court consider Ms. Atkinson's defenses to the FLEX Agreement's arbitration clause, however, the defendants argue that they must be rejected because Ms. Atkinson has failed to direct any of her challenges specifically to the delegation provision, as the Supreme Court's decision in *Rent-A-Center*, 561 U.S. 63, requires her to do.  (*Id.* at pp. 4–7.)  According to the defendants, Ms. Atkinson's only challenge to the delegation provision is its inclusion in an allegedly invalid arbitration clause, which is not a defense that is sufficiently specific or unique to the delegation provision to allow the court to disregard the provision and determine the arbitrability of her claims.  (*Id.*)  Moreover, the defendants argue, Ms. Atkinson fails to present any sufficiently specific or unique challenge to the FLEX Agreement's arbitration clause, because her defenses of unconscionability and economic duress are premised on "alleged flaws

in the formation of the FLEX [Agreement] as a whole." (*Id.* at p. 7.) Ms. Atkinson's arguments, therefore, are "two levels removed from a targeted challenge to the FLEX Delegation Provision," which the defendants argue is sufficient – on its own – to require the enforcement of the dispute resolution procedures outlined in the FLEX Agreement, including the delegation of issues of arbitrability to the arbitrator. (*Id.* (citing *Rent-A-Center*, 561 U.S. 63.)

Even if the court were to entertain Ms. Atkinson's unconscionability and economic duress defenses, the defendants argue, the defenses fail on their merits. (*Id.* at pp. 7–10.) Through the Second Hodges Affidavit, the defendants present documentary evidence that the tablet process used at all Advance Financial locations presents customers with the terms of the FLEX Agreement before they are asked to electronically sign the agreement, which contradicts a key contrary assertion made by Ms. Atkinson in her declaration. (*Id.* (citing Docket No. 21).) Moreover, even if the court were to credit Ms. Atkinson's statements regarding the circumstances surrounding the formation of the FLEX Agreement, the defendants argue that her defenses fail as a matter of law. (*Id.* at pp. 8–10.) According to the defendants, Ms. Atkinson has failed to demonstrate that any portion of the arbitration clause – including the delegation provision – is substantive*l*y unconscionable, and they further argue that her defenses are "nullified" by the generous 60-day opt-out provision contained in the FLEX Agreement's arbitration clause, a physical copy of which Ms. Atkinson concedes having received immediately after signing the agreement. (*Id.* (citing Docket No. 16 ¶ 12).) Accordingly, the defendants argue, Ms. Atkinson has failed to establish a viable contract defense to the dispute resolution procedures established in the FLEX and Installment Agreements, and the court, therefore, must refer the matter to arbitration. (*Id.* at p. 10.)

## LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, where a litigant establishes the existence of a valid agreement to arbitrate the dispute at issue, the district court must grant the litigant's motion to compel arbitration and stay or dismiss proceedings until the completion of arbitration. *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005) (citing 9 U.S.C. §§ 3–4). There is a strong presumption in favor of arbitration under the FAA, *O.J. Distrib., Inc. v. Hornell Brewing Co., Inc.*, 340 F.3d 345, 355 (6th Cir. 2003), as a result of which any doubts regarding arbitrability must be resolved in favor of arbitration, *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).

On a motion to compel arbitration, the party opposing arbitration has the burden to prove that there is a "genuine issue of material fact as to the validity of the agreement to arbitrate." *Brubaker v. Barrett*, 801 F. Supp. 2d 743, 750 (E.D. Tenn. 2011) (quoting *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002)). The FAA permits arbitration agreements to be declared unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citing 9 U.S.C. § 2). Thus, arbitration agreements may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Id.* (quoting *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). Federal courts apply state law to determine whether contract defenses invalidate an agreement to arbitrate. *See Doctor's Associates, Inc.*, 517 U.S. at 687.

## ANALYSIS

In the Petition, the defendants seek to enforce the arbitration clause contained in the FLEX Agreement or, in the alternative, in the parties' earlier Installment Agreement. As the

Sixth Circuit has noted, it is generally within the province of the federal courts to "determine whether the parties have agreed to arbitrate the dispute at issue." *Great Earth Cos*, 288 F.3d at 889 (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)). The defendants, however, maintain that, not only are Ms. Atkinson's claims subject to a valid arbitration agreement, but also that the parties have delegated to the arbitrator all threshold issues concerning the applicability of the relevant arbitration clause to her claims. (Docket No. 12, pp. 6–15.) This delegation provision, the defendants argue, requires that an arbitrator, and not the court, determine the arbitrability of Ms. Atkinson's claims, and the court, therefore, must refer the matter to arbitration. (*Id.*)

I. **The Delegation Provision Requires Referral of This Matter to the Arbitrator.**

Whether a court or an arbitrator decides the validity of an arbitration agreement with a delegation provision is governed by the Supreme Court's decision in *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010). In *Rent-A-Center*, the Supreme Court stated that "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Id.* at 68–69. Like the arbitration clauses contained in the FLEX and Installment Agreements, the *Rent-A-Center* arbitration agreement provided that it was for an arbitrator, not any other forum, to decide "any dispute relating to the interpretation, applicability, enforceability or formation of th[e] Agreement, including . . . any claim that all or any part of this Agreement is void or voidable." *Id.* at 66. The Supreme Court further held that a delegation provision is a separately enforceable provision because, under the FAA, "an arbitration provision is severable from the remainder of the contract." *Id.* at 70–71 (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (6th Cir. 2006)). Put differently, "a party's challenge to another provision of the contract, or

11

to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Id.* at 70. This severability rule applies even if the delegation provision is contained within the arbitration agreement. *Id.* at 72; *Danley v. Encore Capital Grp., Inc.*, -- F. App'x -- , 2017 WL 710470, at *3 (6th Cir. Feb 22, 2017).

The *Rent-A-Center* decision does not mean, however, that a district court must automatically grant a motion to compel arbitration in any situation in which the agreement underlying the dispute contains a delegation provision, because the party seeking to avoid arbitration may still raise defenses to the delegation provision itself. *Danley*, 2017 WL 710470, at *3. The party opposing arbitration must "challenge[] the delegation provision s*pecifically*," and its failure to do so requires the court to enforce the delegation provision as written. *Id.* (quoting *Rent-A-Center*, 561 U.S. at 72); *accord Milan Express Co. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 590 F. App'x 482, 485–86 (6th Cir. 2014). In her Response, Ms. Atkinson opposes the Petition on the grounds that the arbitration clause and delegation provision contained in the FLEX Agreement are invalid, because she entered into the agreement to arbitrate under economic duress and because they are unconscionable. (Docket No. 15, pp. 6–14.) Ms. Atkinson has, however, failed to advance any challenge to the parties' agreement to delegate questions of arbitrability that is specific and unique to the delegation provision, and she has failed, therefore, to meet her burden in her opposition to the Petition.

A.   **Economic Duress**

Ms. Atkinson argues that the facts she has presented to the court demonstrate that, "when agreeing to arbitration" in this matter, she acted under economic duress, thereby invalidating the arbitration clause and the delegation provision contained therein. (Docket No. 15, p. 12.) In support of this contractual defense, Ms. Atkinson argues that the defendants' threat of default on

12

her previous loan after they refused to continue to service the Installment Agreement "amounted to an unlawful acceleration of the outstanding loan balance, [but she] lacked both the knowledge and sophistication to understand this fine distinction of law." (*Id.*) As a result of this "fraud and bad faith" on the part of the defendants, Ms. Atkinson argues, she was forced to agree to take out a FLEX loan "with more onerous terms [than her prior loan], including an arbitration agreement." (*Id.* at pp. 12–13.) "Accordingly," Ms. Atkinson states, "because the arbitration clause in the FLEX Contract was secured by means of economic duress, the arbitration provision contained therein is unenforceable." (*Id.* at p. 13.)

    This argument, however, is not sufficiently specific or unique to the delegation provision to effectively contest the defendants' argument that the provision is enforceable, and thereby allow the court to adjudicate the validity of the arbitration clause. *See Rent-A-Center*, 561 U.S. at 86 (Stevens, J., dissenting) ("A claim that an entire arbitration agreement is invalid will not go to the court unless the party challenges the particular sentences that delegate such claims to the arbitrator, on some contract ground that is particular and unique to those sentences."). Ms. Atkinson attempts to frame her proof as demonstrating that the arbitration clause was secured by means of economic duress, but a mere challenge to the arbitration clause is not sufficient to demonstrate that the delegation provision contained therein is also invalid, because a delegation provision is severable from an arbitration clause even when it is contained within that clause. *Id.* at 72. Moreover, federal courts have routinely refused to disregard delegation provisions when the party opposing arbitration raises a defense to the provision that is no different than her defense to the contract as a whole, or to the arbitration clause in general. *See, e.g.*, *Patton v. Volkswagen Grp. of Am. Chattanooga Ops., LLC*, No. 1:16-cv-327, 2017 WL 1288677, at *7 (E.D. Tenn. Apr. 6, 2017); *Carey v. Uber Techs., Inc.*, No. 1:16-cv-1058,

2017 WL 1133936, at *6 (N.D. Ohio Mar. 27, 2017); *Flint v. Bank of Am., N.A.*, No. 15-13006, 2016 WL 1444505, at *6–7 (E.D. Mich. Apr. 13, 2016).

Moreover, even if the court could invalidate the delegation provision on the grounds that it was included in an arbitration clause that was procured as a result of duress, it is not clear that Ms. Atkinson's economic duress defense to the FLEX Agreement's arbitration clause is sufficiently particular and unique to that clause to effectively contest the clause's enforceability. Ms. Atkinson's duress defense to the arbitration clause essentially boils down to the argument that, because she only agreed to the FLEX Agreement because she was under duress, it necessarily follows that she only agreed to the arbitration clause contained in that agreement because she was under duress. As the defendants have noted, Ms. Atkinson "does not argue that she was extorted and coerced into executing *an arbitration agreement*; she claims that she was coerced into executing a higher interest FLEX [Agreement] that happened to contain an arbitration clause." (Docket No. 20, p. 5.) As the court has already noted, a challenge to the validity of a contract as a whole is not sufficient to effectively contest the enforceability of an arbitration clause contained within that contract.[3]

**B.     Unconscionability**

Ms. Atkinson also argues that the facts she has presented to the court demonstrate that the FLEX Agreement's arbitration clause is unconscionable, because it was presented in a contract of adhesion, which gave her no meaningful opportunity to bargain over its form, and because there was unequal bargaining power between her and Advance Financial, which gave her no real

---

[3] Ms. Atkinson herself appears to acknowledge that her contractual defenses are not specific to the agreement to arbitrate or to the delegation provision when she acknowledges that ruling on her defenses will require the court to make findings of fact that "go [to] the underlying merits of [her] claims that [the] [d]efendants used coercion, threats, misrepresentation, bad faith, and power to force her into an extortionate credit transaction." (Docket No. 15, p. 13.)

14

choice other than to "immediately acquiesce" to the FLEX Agreement. (Docket No. 15, pp. 7–11.) Again, however, Ms. Atkinson has advanced a contractual defense that fails to challenge the validity of the delegation provision specifically, a failure that is underscored by Ms. Atkinson's faulty assertion that her "unconscionability argument invalidates the entire arbitration clause, including the delegation provision contained within it." (*Id.* at p. 10 n.3). Pursuant to *Rent-A-Center*, 561 U.S. 63, a delegation provision is severable from the arbitration clause of which it is a part and, as many federal courts have recognized, a defense to the arbitration clause in general is not sufficient to contest a defendant's argument that the delegation provision contained therein is enforceable. *See, e.g.*, *Flint*, 2016 WL 1444505, at *6–7.

Moreover, even if the court could invalidate the delegation provision on the grounds that it was included in an invalid arbitration clause, it is not clear that Ms. Atkinson's unconscionability defense to the arbitration clause in the FLEX Agreement is sufficiently specific and unique to constitute a valid challenge. Her arguments regarding the unconscionability of the arbitration clause all rest on her allegations regarding the formation of the FLEX Agreement itself, including that she did not see the terms of the FLEX Agreement before she signed it (*id.* at p. 7) and that she was threatened with default on her installment loan if she did not agree to take out a FLEX loan (*id.* at p. 15).

Accordingly, because Ms. Atkinson has failed to challenge the delegation provision specifically, the defendants' argument that the delegation provision is enforceable remains uncontested, and the court cannot reach the merits of her duress and unconscionability arguments. In light of the strong presumption in favor of arbitration under the FAA – under which any doubts regarding arbitrability must be resolved in favor of arbitration – the court concludes that it must treat the FLEX Agreement's delegation provision as valid and enforce the

provision. The court must leave any challenge to the validity of the FLEX Agreement's arbitration clause to the arbitrator and, therefore, will refer the matter to arbitration.

## II. The Court Will Stay the Matter Pending Resolution of the Arbitration.

In the event that the court compels arbitration, the defendants have requested that the court dismiss Ms. Atkinson's claims or, in the alternative, stay the current proceedings pending resolution of the arbitration. (Docket No. 11.) The FAA instructs that, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration," the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Ms. Atkinson has requested that the court stay this matter, rather than dismiss it. (Docket No. 15, p. 14.) Nevertheless, the defendants argue, the court should dismiss Ms. Atkinson's claims, because dismissal is appropriate when a plaintiff's claims, "on their face, . . . so clearly fall within the scope of an arbitration clause that there [is] no question as to their arbitrability." (Docket No. 12, p. 11 (quoting *Dearmon*, 2014 WL 1961911, at *2).)

It is true that, when a court issues an order compelling arbitration, it may choose to dismiss the suit, rather than stay it, where all of the issues involved in the suit are subject to arbitration. *See Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000) (quoting *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161 (5th Cir. 1992)). Dismissal is not warranted in the present case, however, because the court has not determined that that Ms. Atkinson's claims "clearly fall" within the scope of the arbitration clause, nor that there is "no question as to their arbitrabilty." *Dearmon*, 2014 WL 1961911, at *2. Rather, the court's decision to refer Ms. Atkinson's claims to arbitration rests on its determination that, pursuant to the FLEX Agreement's delegation provision, the arbitrator is entitled to determine the arbitrability of

matter. The court finds it appropriate, therefore, to stay this action pending resolution of the arbitration. *See, e.g.*, *Howard v. Rent-A-Center, Inc.*, No. 1:10-cv-103, 2010 WL 3009515, at *6 (E.D. Tenn. July 28, 2010) (concluding that a stay was appropriate, rather than dismissal of the plaintiff's claims, when the parties had agreed to delegate questions of arbitrability to an arbitrator, and the court had not determined whether all of the plaintiff's claims were covered by the arbitration agreement).

## **CONCLUSION**

For the reasons discussed herein, the Petition (Docket No. 11) will be granted. The court will refer the matter to arbitration and stay these proceedings pending resolution of that arbitration.

An appropriate order will enter.

 _____
 ALETA A. TRAUGER
 United States District Judge

17